**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DAVIN BILLIOT** | * | **CIVIL CASE** |
| | * | **NO.:** |
| **VERSUS** | * | |
| | * | |
| **SELECT OILFIELD SERVICES, LLC;** | * | |
| **BTB REFINING, LLC; GLOBAL OIL** | * | **JUDGE:** |
| **MANAGEMENT GROUP, LTD.;** | * | |
| **GLOBAL OIL EOR SYSTEMS, LTD.;** | * | |
| **GLOBAL OIL FINANCIAL SERVICES,** | * | |
| **LLC; SUPREME ELECTRICAL SERVICES,** | * | **MAGISTRATE:** |
| **INC. d/b/a LIME INSTRUMENTS, LLC** | * | |
| **and/or LIME INSTRUMENTS; HARRY** | * | |
| **SARGEANT, III; and KINSALE INSURANCE** | * | |
| **COMPANY** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel come Plaintiff, **Davin Billiot**, a resident of the Parish of Terrebonne, State of Louisiana who respectfully aver as follows:

## PARTIES, JURISDICTION AND VENUE

### 1.

This is an admiralty and maritime claim within the jurisdiction of the United States and this Honorable Court under 28 USC §1333.  Plaintiff brings this claim under the General Maritime Law of the United States as supplemented by the laws of the State of Louisiana. Further, Plaintiff designates this case as an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure.

2.

Named as defendants herein are:

**Select Oilfield Services, LLC ("Select")** a Louisiana limited liability company domiciled in Belle Chasse, Louisiana in the Parish of Plaquemines;

**BTB Refining, LLC ("BTB")**, a limited liability company organized under the laws of Texas and which is both domiciled and has its principle place of business in Nueces County, Texas, authorized to do and doing business in the State of Louisiana and within the jurisdiction of this Honorable Court;

**Global Oil Management Group, LTD. ("Global Oil")**, a limited liability company organized under the laws of Texas and which is both domiciled and has its principle place of business in Nueces County, Texas, authorized to do and doing business in the State of Louisiana and within the jurisdiction of this Honorable Court;

**Global Oil EOR Systems, Ltd. ("Global EOR")**, a foreign company or corporation with, upon information and belief, its principal place of business in Florida, but at all times pertinent hereto, Global EOR was doing business in Louisiana and within the jurisdiction of this Honorable Court;

**Global Oil Financial Services, LLC ("Global Financial")**, a limited liability company organized under the laws of Florida with its principal place of business in Boca Raton, Florida but at all times pertinent hereto, Global Financial was doing business in Louisiana and within the jurisdiction of this Honorable Court;

**Supreme Electrical Services, Inc. d/b/a Lime Instruments, LLC and/or Lime Instruments ("Lime")**, a foreign corporation organized under the laws of Texas and which is both domiciled and has its principle place of business in Harris County, Texas, authorized to do and doing business in the State of Louisiana and within the jurisdiction of this Honorable Court;

**Harry Sargeant, III ("Sargeant")**, a person of the full age of majority and a citizen and resident of Palm Beach County, Florida, but at all times pertinent hereto, Sargeant was doing business in the State of Louisiana and within the jurisdiction of this Honorable Court; and

**Kinsale Insurance Company ("Kinsale")**, a foreign insurance company domiciled in Arkansas, but at all times pertinent hereto, Kinsale was authorized to do and/or doing business in Louisiana and within the jurisdiction of this Honorable Court. Kinsale is and has at all times relevant been the commercial general liability insurer of BTB.

3.

This Court has personal jurisdiction over **BTB, Global Oil, Global EOR, Global Financial, Lime, and Sargeant** under Rule 4 of the Federal Rules of Civil Procedure and in accordance with the Louisiana Long-Arm Statute, §13:3201 *et seq*., because the causes of action asserted herein arise out of **BTB, Global Oil, Global EOR, Global Financial, Lime, and Sargeant's** transacting business in this State, contracting to supply services in this State, and causing injury and damage in this State by their negligent conduct in this State. **BTB, Global Oil, Global EOR, Global Financial (collectively the "*Corporate Defendants*")** also functioned as a single business enterprise and as the alter egos of each other and of **Sargeant**. Further, **Sargeant** used the Corporate Defendants as a sham to perpetrate fraud. This Court has personal jurisdiction over **Kinsale** pursuant to Louisiana's Direct-Action Statute, La.R.S. §22:1269.

4.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts and/or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Louisiana, and Plaintiff's injuries and damages that are the subject of this action were suffered in the Easter District of Louisiana.

5.

The abovenamed defendants are justly and truly indebted to Plaintiff jointly, severally and *in solido*, for all damages that are reasonable in the premises together with legal interest from date of injury and all costs of these proceedings, by reason of the following:

## FACTS REGARDING THE PLATFORM AND INCIDENT

6.

At all material times, Clovelly Oil Co., LLC (hereinafter "Clovelly") owned and operated the West Lake Pontchartrain East Block 41 Oil and Gas Production Facility (the "Clovelly Platform") located in Lake Pontchartrain, and within the jurisdiction of this Honorable Court.

7.

On October 15, 2017, Petitioner, **Davin Billiot**, was employed by Crosby Energy Services and assigned to work on the Clovelly Platform.

8.

The Clovelly Platform processes oil, gas, and produced water from three oil wells and one gas well located near, but at different distances from, the Platform.

9.

Production from those wells is transported to the Clovelly Platform via separate four-inch oil or gas flowlines.

10.

The Platform consists of process separators, treaters, tanks, pumps, measurement equipment, a gas compressor, and pollution containment systems located on its upper deck, and oil, water, and ballast storage compartments located in its concrete hull.

11.

The Platform was manned 24 hours a day, seven days week, and had personnel quarters and utilities to support manned operations.

12.

On or about October 2, 2017, Clovelly entered into an oral agreement or contract with third-party contractors, the **Corporate Defendants and Select**, to perform wax paraffin cleaning services to three oil flowlines, attached respectively to State Lease 4041 Well No. 1 Well (Serial No. 133600), State Lease 4041 Well No. 3 Well (Serial No. 136306), and State Lease 5568 Well No. 1 Well (Serial No. 137574) (collectively the "Wells"), all of which are connected to the Platform via separate four-inch flowlines.  Prior to entering into that contract, Clovelly had been informed about the paraffin wax cleaning process by representatives of the **Corporate Defendants and Select**.

13.

Clovelly relied upon the knowledge and expertise of the **Corporate Defendants and Select** in entering into this agreement or contract.

14.

The **Corporate Defendants' and Select's** flowline paraffin wax cleaning process consists of a Hydra Steam Generator that produces steam through an exothermic reaction by decomposing hydrogen peroxide (H2O2), upon contact with a patented, specially designed "Hydra Catalyst".

15.

The **Corporate Defendants** own and operate a steam generating machine, designated as the Hydra Steam Generator No. 003/Hydra III (the "Hydra Steam Generator"), where the exothermic reaction that produces the steam (heat) and pressure occurs.

16.

Upon information and belief, the **Corporate Defendants** engaged and/or contracted **Lime** to design, develop, program, and control a Programmable Logic Controller and/or software and/or

programs (the "PLC"), which controlled and monitored the exothermic reaction, together with the resulting steam (heat) and pressure.

17.

The produced steam generated by this process was to be injected into the flowlines and was designed to melt the wax paraffin accumulations on the interior diameter walls of the oil flowlines.

18.

Thereafter, the melted wax paraffin and water mixture was pressure flushed through the length of the oil flowlines to the Platform, where the effluent flowed into a 400 barrel, welded galvanized steel tank (the "Tank") located on the Platform's upper deck for ultimate disposal.

19.

On October 15, 2017, the **Corporate Defendants** and/or **Select** mobilized a tug boat and spud barge ("the  Barge") in Lake Pontchartrain preparatory to the commencement of their paraffin wax cleaning  service on Clovelly's wells.  The tug and Barge were required to perform the job because of the location of the Clovelly wells on the navigable waters of Lake Pontchartrain.

20.

Located on the Barge were the Hydra Steam Generator, the PLC, the H2O2 tanks, the catalyst, and other necessary equipment including the pump and hoses.

21.

The **Corporate Defendants, Lime** and/or **Select** commenced on the Barge their paraffin wax  cleaning service on the first of Clovelly's wells at approximately 1:30 p.m. on October 15, 2017.

22.

Present on the Barge at the commencement of the operation, and at all relevant times thereafter, were employees and/or representatives of the **Corporate Defendants, Select** and **Lime**, including Al Kimbrell, Tim L. Morrison ("Morrison"), William Spurlock, Alan Garza, George Salines, and Nelson Garcia-Tavel.

23.

The Hydra Steam Generator was connected to the wellheads by a coflex hose by employees or representatives of **Select** and/or the **Corporate Defendants,** ,and controlled and monitored at all relevant times on the Barge by employees and/or representatives of **Select,** the **Corporate Defendants** and/or **Lime**, or any one of them.

24.

Using the process described above, the **Corporate Defendants**, **Select**, and/or **Lime** successfully cleaned the oil flowlines for State Lease 4041 Well No. 1 Well (Serial No. 133600) and State Lease 4041 Well No. 3 Well (Serial No. 136306), without incident.

25.

At approximately 7:00 p.m. on October 15, 2017, the **Corporate Defendants, Select** and/or **Lime** began paraffin wax cleaning service on the four-inch oil flowline attached to State Lease 5568 Well No. 1 (Serial No 137574) using the same process and procedures on the Barge they had used to clean the flowlines for State Lease 4041 Well No. 1 Well (Serial No. 133600) and State Lease 4041 Well No. 3 Well (Serial No. 136306).

26.

During the process and procedures on the Barge to clean paraffin wax on the four-inch flowline attached to State Lease 5568 Well No. 1 (Serial No. 137574), at approximately 7:18 p.m.,

a catastrophic explosion and fire occurred in and around the Tank causing extensive, severe and disabling injuries to Plaintiff, **Davin Billiot** (the "Incident").

### FACTS CONCERNING MARKETING OF AND REPRESENTATIONS RELATED TO THE HYDRA STEAM GENERATOR

27.

In September 2017, **Global Oil** provided Clovelly with a presentation concerning a process to steam-clean oil flowlines connected to the Platform using a patented system – the Hydra Steam Generator.

28.

This presentation was provided to Clovelly by Morrison, who was held out to be the Executive Director of **Global Oil**.

29.

The presentation portrayed the Hydra Steam Generator as "completely new," "state of the art" equipment that would use "green technology" to perform paraffin wax cleaning of Clovelly's oil flowlines.

30.

The presentation states that "Hydra personnel are trained to safely transport, store, and utilize H2O2 in connection with the operation of the Hydra Steam Generator.

3.

Despite the fact that **Global Oil** was the entity that originally provided Clovelly with information regarding the Hydra Steam Generator, upon information and belief, **Global Oil** now denies that it was performing any services for Clovelly.

32.

Instead, in its answer to Clovelly's First Amended and Restated Complaint, **BTB** states that it was "engaged in paraffin removal" of Clovelly's flowlines. (17-14435 @ Rec. Doc. 75, ¶ 16.).

33.

**BTB** also admits in its answer to Clovelly's First Amended and Restated Complaint that "it owns and operates a steam generating machine called the Hydra III" – the Hydra Steam Generator at issue in this litigation.  (17-14435 @ Rec. Doc. 75, ¶ 18.)

34.

Contrary to this admission, in responses to discovery propounded by Clovelly, **BTB** states that while it provided services related to the Hydra Steam Generator and purchased some of the related equipment, it does not have any ownership interest in the Hydra Steam Generator.

35.

Morrison was held out to be the Executive Director of **Global Oil**, in responses to discovery propounded by Clovelly in the previously filed matter (Case No. 17-14435), **BTB** produced a W-2 issued to Morrison for 2017, indicating that Morrison was an employee of **BTB**.

36.

In addition, and upon information and belief, there exists an Employment Agreement between Morrison and **Global Financial** effective June 15, 2015.

37.

Upon information and belief, the Employment Agreement provides that Morrison shall serve as **Global Financial's** Director of Upstream Operations for a term of three years beginning

on June 16, 2015.  The Agreement further states that Morrison "shall hold such other positions with the subsidiaries or affiliates of [Global Financial] that [Global Financial's] Managing Member shall determine from time to time, and Employee shall report to Managing Member."

38.

Although Clovelly received marketing materials for the Hydra Steam Generator from **Global Oil**, upon information and belief, Global **EOR** also had marketing materials for the Hydra Steam Generator, which were in Morrison's possession, but which were never provided to Clovelly prior to the Incident.

40.

A placard affixed to the Hydra Steam Generator lists the "owner" as Global Oil EOR Systems, Ltd.

41.

Furthermore, on or about August 14, 2015, **Global EOR** applied for a patent related to the Hydra Steam Generator.

**FACTS CONCERNING CORPORATE DEFENDANTS AND SINGLE BUSINESS ENTERPRISE, ALTER EGO, AND SHAM TO PERPETRATE FRAUD**

**Facts Relating to Global Oil and Sargeant**

42.

**Sargeant** is an owner and the chairman of **Global Oil**.    Sargeant is also the managing member of **Global Oil**

43.

Kevin Kirkeide is a manager and the Chief Financial Officer of **Global Oil**.

44.

**Global Oil** claims that it has no employees other than **Sargeant** and Kevin Kirkeide.

45.

Nelson Garcia-Tavel states on his publicly available LinkedIn profile that he is the VP of Business Development for **Global Oil, Global EOR**, and **BTB**.

46.

**Global Oil's** business address in the United States is 25 Sea Breeze Avenue, Suite 300, Delray Beach, Florida 33483.

47.

**Global Oil** was capitalized with only $5,000.

48.

Despite **Global Oil's** marketing of the Hydra Steam Generator to Clovelly and its apparent relationship to Morrison, in its responses to discovery propounded by Clovelly in the previously filed matter (Case No. 17-14435), **Global Oil** now claims that it has no interest in or relationship to the Hydra Steam Generator.

49.

In addition, upon information and belief, contrary to its claim that it has no interest in the Hydra Steam Generator, in or around December 2015, **Global Oil,** through Morrison, entered into a contract concerning the construction and sale of the Hydra Steam Generator and technology related thereto and the technical drawings associated with that work were done by **Global EOR**.

50.

**Global Oil** represents it has no bank accounts and no individuals with authority to issue checks, money orders, wire transfers, deposits, and/or withdrawals from any bank accounts.

51.

**Global Oil** also represents it has no insurance of any kind for any period.

52.

Despite its lack of bank accounts, **Global Oil** admits that it has "booked loans from and to **BTB**" and/or "regularly received and made loans to/from **BTB**."

53.

**Global Oil** is effectively a shell entity that was used to develop, market, and sell the Hydra Steam Generator.

**<u>Facts Relating to BTB and Sargeant</u>**

54.

**Sargeant** is a member of and owns 99.5% of **BTB**.

55.

As the 99.5% owner of **BTB**, substantially all profits realized by **BTB** would personally benefit **Sargeant**.

56.

Kevin Kirkeide is the manager of **BTB**.

57.

Nelson Garcia-Tavel states on his publicly available LinkedIn profile that he is the VP of Business Development for **Global Oil, Global EOR**, and **BTB**.

58.

**BTB** issued a W-2 to Morrison for 2017.

59.

Kevin Kirkeide, Morrison, and Nelson Garcia-Tavel all made operational and day-to-day decisions for **BTB**, including decisions related to strategic planning, marketing for new business,

retaining existing business, contracting, client/customer relationships, and/or hiring and firing of personnel.

60.

Upon information and belief, **Sargeant** also makes operational and day-to-day decisions for **BTB**, including decisions related to strategic planning, marketing for new business, retaining existing business, contracting, client/customer relationships, and/or hiring and firing of personnel.

61.

**Sargeant** also has the authority to issue checks, money orders, wire transfers, deposits, and/or withdrawals from **BTB's** bank accounts.

62.

It has been judicially determined that **Sargeant** has "full control over [**BTB's**] operations," that **Sargeant** has "ultimate managerial control" over **BTB**, and **Sargeant** has "full control over **BTB's** operations and direct[s] and control[s] its decisions." *See PDVSA Petroleo S.A. v. Trigeant, Ltd.*, No. 09-38, 2012 WL 3249531 (S.D. Tex. Aug. 7, 2012).

63.

It has been judicially determined that **Sargeant** has used **BTB** in the commission of a fraud. *See PDVSA Petroleo S.A. v. Trigeant, Ltd.*, No. 09-38, 2012 WL 3249531 (S.D. Tex. Aug. 7, 2012).

64.

It has been judicially determined that **Sargeant** has testified falsely about his role and involvement with **BTB Refining, LLC** in the past. *See PDVSA Petroleo S.A. v. Trigeant, Ltd.*, No. 09-38, 2012 WL 3249531, at *5 (S.D. Tex. Aug. 7, 2012).

65.

One of **BTB's** business addresses is 25 Sea Breeze Avenue, Suite 300, Delray Beach, Florida 33483.

66.

**BTB** was capitalized with a loan.

## Facts Relating to Global EOR and Sargeant

67.

**Sargeant** is an owner, member, shareholder, and/or director of **Global EOR**.

68.

**Global EOR** was capitalized with only $5,000.

69.

Nelson Garcia-Tavel states on his publicly available LinkedIn profile that he is the VP of Business Development for **Global Oil, Global EOR**, and **BTB**.

70.

Upon information and belief, Nelson Garcia-Tavel has executed contracts as the VP of Business Development on behalf of **Global EOR**.

71.

Upon information and belief, Nelson Garcia-Tavel is also listed as the VP Operations on Quality Control Procedures for the Hydra III Steam Generator prepared and updated by **Global EOR**.

72.

**Sargeant** has admitted in a pleading filed June 21, 2018 that a **Sargeant**-owned entity is the owner of the Hydra Steam Generator system. See *Harry Sargeant, III v. Daniel Sargeant, et al.*, No. 50-2018-CA-007932XXXX-MB (15th Judicial Circuit, Palm Beach County, Florida).

73.

Specifically, in *Sargeant v. Sargeant*, *supra*, **Harry Sargeant, III** filed suit in his personal capacity.

74.

**Sargeant** generally alleges that the named defendants in that case appropriated, and conspired to appropriate, **Sargeant's** private and confidential personal and business information.

75.

**Sargeant** alleges that the private "business information contained [therein] included details and communications regarding [Harry Sargeant, III's] private business ventures. . . . [And], [t]his business information included links to prototype operations of a new steam generator system being developed by one of [Harry Sargeant, III's] businesses. . . ." *See Harry Sargeant, III v. Daniel Sargeant, et al.*, No. 50-2018-CA-007932XXXX-MB (15th Judicial Circuit, Palm Beach County, Florida).

76.

As noted above, a placard affixed to the Hydra Steam Generator lists the "owner" as **Global Oil EOR Systems, Ltd**.

77.

In addition, on or about August 14, 2015, **Global EOR** applied for a patent related to the Hydra Steam Generator.

78.

Upon information and belief, **Global EOR** provided technical drawings related to the Hydra Steam Generator for a sales and construction proposal and/or contract with **Lime**.

79.

Upon information and belief, in or around December 2015, **Global EOR** entered into a Hydra Unit Work Authorization with Allied Oilfield Machine and Pump, LLC to furnish labor, equipment, and material to manufacture and provide equipment related to the Hydra Steam Generator.

80.

Upon information and belief, **Global EOR** has marketing materials for the Hydra Steam Generator, which were in Morrison's possession, but that were never provided to Clovelly prior to the Incident.

81.

Upon information and belief, **Global EOR's** marketing materials, which were created on or about February 2016, reveal knowledge regarding dangers associated with the Hydra Steam Generator that were not disclosed to Clovelly or Plaintiff prior to the Incident.

82.

Upon information and belief, **Global EOR's** marketing materials represent that the Hydra Steam Generator is trademarked, but Plaintiff has been unable to locate any information confirming such a trademark.

**Facts Relating to Global Financial and Sergeant**

83.

**Sergeant** is an owner, member, shareholder, and/or director of **Global Financial**.

84.

Kevin Kirkeide is the manager of **Global Financial**.

85.

Upon information and belief, Morrison entered into an Employment Agreement with **Global Financial** effective June 16, 2015.

86.

Upon information and belief, the Employment Agreement provides that Morrison shall serve as **Global Financial's** Director of Upstream Operations for a term of three years beginning on June 16, 2015.  The Agreement further states that Morrison "shall hold such other positions with the subsidiaries or affiliates of [**Global Financial**] that [**Global Financial's**] Managing Member, shall determine from time to time, and Employee shall report to Managing Member."

87.

Upon information and belief, Kevin Kirkeide is also listed as the Secretary and Chief Financial Officer of **Global Financial** in the Employment Agreement with Morrison.

88.

Upon information and belief, on or about October 25, 2016, Morrison's payroll was directly affected by **Sargeant's** personal finances, including an expected "settlement."

89.

Upon information and belief, Morrison, and **Global Financial** through Morrison, knew of dangers associated with the Hydra Steam Generator prior to the Incident, and failed to convey these dangers to Clovelly and Plaintiff.

90.

Upon information and belief, Morrison routinely communicated with **Sargeant** regarding Morrison's work with the Hydra Steam Generator and the staffing, finances, and operations of such work.

91.

The principal address and mailing address of **Global Financial** is 25 Sea Breeze Avenue, Suite 300, Delray Beach, Florida 33483.

**THE CORPORATE DEFENDANTS AND SARGEANT ARE A SINGLE BUSINESS ENTERPRISE AND ALTER EGOS OF EACH OTHER, AND SARGEANT USES THE CORPORATE DEFENDANTS AS SHAMS TO PERPETRATE FRAUD**

92.

Plaintiff reiterates, re-alleges and re-avers all allegations in the preceding paragraphs as if fully set forth at length herein.

93.

The **Corporate Defendants** share employees, including, at least, Morrison, Kevin Kirkeide, and Nelson Garcia-Tavel.

94.

At all relevant times, Morrison was acting as the agent of **Global Oil, BTB**, and/or **Global Financial**, and in his capacity as an agent made representations to Clovelly regarding the safety of the Hydra Steam Generator, which representations concealed dangers associated with the Hydra Steam Generator.

95.

The **Corporate Defendants** share assets, including the Hydra Steam Generator and the technology, intellectual property, and physical equipment associated with the Hydra Steam Generator.

96.

**BTB, Global Oil, and Global Financial** all share the same business address, 25 Sea Breeze Avenue, Suite 300, Delray Beach, Florida 33483.

97.

In discovery in the *Clovelly v BTB, et al*. case (Civil Action No. 17-14435), **BTB** and **Global Oil** were unable to point to any corporate formalities observed by either entity.

98.

The **Corporate Defendants** are all privately owned entities in which **Sargeant** has a substantial interest and are under common control and ownership.

99.

In his position as a member and owner of the **Corporate Defendants**, **Sargeant** operated and acted through these entities.

100.

Upon information and belief, **Sargeant** routinely communicated with employees of the **Corporate Defendants** about the Hydra Steam Generator and the staffing, finances, and operations related to same.

101.

At all relevant times, the **Corporate Defendants** were under the control of **Sargeant**.

102.

The **Corporate Defendants** are engaged in a single business enterprise of developing, marketing, and contracting for the use of and sales related to the Hydra Steam Generator.

103.

**Sargeant** and the **Corporate Defendants** acted as the alter egos and agents of each other, including through the sharing of assets, such as the Hydra Steam Generator, and employees, including Morrison, Kevin Kirkeide, and Nelson Garcia-Tavel.

104.

Upon information and belief, as the shareholder, member, director, and/or owner of the **Corporate Defendants**, **Sargeant** has attempted to disguise the true ownership of the Hydra Steam Generator, in an effort to conceal responsible entities and avoid corporate and personal liability for the injuries and damages caused by the Hydra Steam Generator.

105.

Upon information and belief, **Sargeant** founded, controls, and dominates the **Corporate Defendants** and uses the corporate form to shield himself from liability for wrongdoing.

106.

Upon information and belief, **Sargeant**, through the **Corporate Defendants**, marketed and contracted for the use of and sales related to the Hydra Steam Generator, which was unreasonably dangerous.

107.

Upon information and belief, the corporate fiction of the **Corporate Defendants** was a sham to perpetrate a fraud and to shield the true owner of the Hydra Steam Generator and

**Sargeant** from liability for wrongdoing.

108.

**Global Oil**, the company used to market the Hydra Steam Generator, and with which Clovelly believed it was dealing, is merely a shell entity presumably constructed to shield other **Corporate Defendants** and **Sargeant** from liability for damages caused by the unreasonably dangerous Hydra Steam Generator.

109.

Upon information and belief, **Sargeant's** exercise of control over the **Corporate Defendants** was used to commit a wrong that injured Plaintiff.

110.

In addition, upon information and belief, **Sargeant** and the **Corporate Defendants** have committed constructive fraud through the following actions: misrepresenting that the Hydra Steam Generator was a safe product or process, which misrepresentation was made even though **Sargeant** and the **Corporate Defendants** knew of dangers associated with the Hydra Steam Generator that were not disclosed to Clovelly and Plaintiff, and which misrepresentation was made with the intent to induce, and actually did induce, Clovelly to contract for the use of the Hydra Steam Generator, and which ultimately resulted in severe injuries to Plaintiff.

111.

Upon information and belief, as the member and owner of the privately held **Corporate Defendants**, **Sargeant** directly benefited from the constructive fraud committed by the **Corporate Defendants**, which includes misrepresentations regarding the safety of the Hydra Steam Generator, made to maximize sales and profits.

112.

Adherence to the fiction of the separate existence of **Sargeant** and the **Corporate Defendants** will permit an abuse of the corporate privilege and would promote injustice.

## COUNT ONE - CAUSES OF ACTION
## (FAULT, NEGLIGENCE, AND STRICT LIABILITY)

113.

Plaintiff reiterates, re-alleges and re-avers all allegations in the preceding paragraphs as if fully set forth at length herein.

114.

The **Corporate Defendants, Select** and **Lime**, as the parties responsible for cleaning the wax paraffin  from the flowline attached to the State Lease 5568 Well No. 1, had in their exclusive custody, control,  and garde on the Barge during the cleaning operation, the chemical compounds and catalysts, the Unit,  the Computer, and other equipment used to clean the wax paraffin from Clovelly's flowline.

115.

The **Corporate Defendants, Select** and **Lime** were solely responsible for the safe operation of the  process, procedures, and equipment used to clean the oil flowline for State Lease 5568 Well No. 1 of  its accumulated wax paraffin at the time of the Incident.

116.

The Incident and the injuries and damages to Plaintiff, **Davin Billiot**, were legally and proximately caused on the Barge by the fault, including negligence and/or strict liability, of the **Corporate Defendants**, **Select**, **Lime** and **Sargeant**, and their officers, agents, employees, and those for whom they are legally responsible and by their equipment, processes and/or procedures and/or by the equipment, processes and/or for which they are legally responsible, in the following non-exclusive particulars:

a.   Failing to properly mix hydrogen peroxide and the patented catalyst prior to injection into the flowline for State Lease 5568 Well No. 1;

b.   Failing to deoxidize Oxygen generated during the chemical reaction creating steam to melt wax paraffin and clean the flowline for State Lease 5568 Well No. 1 during the cleaning process;

c.   Failing to monitor and/or regulate and/or control the process that generated the pressure introduced into the flowline for State Lease 5568 Well No. 1 during the cleaning process;

d.   Failing to monitor and/or regulate and/or control the process that generated the temperature introduced into the flowline for State Lease 5568 Well No. 1 during the cleaning process;

e.   Failing to have adequately trained personnel responsible for monitoring and/or regulating and/or controlling the process, and administering the cleaning process of the flow line for State Lease 5568 Well No. 1;

f.   Failing to have adequate and proper equipment used during the process to clean the flow line for State Lease 5568 Well No. 1;

g.   Failing to disclose to Plaintiff and to Clovelly prior the Incident known dangers associated with the Hydra Steam Generator;

h.   Failing to warn Plaintiff and Clovelly prior to the Incident of the known dangers associated with the Hydra Steam Generator; and

i.   All such other acts of fault, negligence, and/or strict liability as may be shown at the trial of this case.

117.

In addition to the above stated acts of fault, negligence, and/or strict liability, Plaintiff alleges, in the alternative, that his damages were legally and proximately caused by acts and/or omissions of the **Corporate Defendants**, **Select**, **Lime**, and **Sargeant**, which acts or omissions may be beyond proof by Plaintiffs but which are within the knowledge and control of the **Corporate Defendants**, **Lime**, and **Sargeant**, there being no other possible conclusion that the Incident, and the injuries and damages suffered by Plaintiff, were caused by and resulted from the negligence of the **Corporate Defendants**, **Select**, **Lime**, and **Sargeant**.

118.

Plaintiff specifically pleads the doctrine of *res ipsa loquitur*.

119.

Plaintiff specifically pleads the doctrine of *respondeat superior* for any and all actions of Morrison and any other employees, agents, and/or representatives of the **Corporate Defendants**, **Select**, **Lime**, and **Sargeant**.

120.

The Incident and the injuries and damages to Plaintiff occurred through no fault of Plaintiff.

121.

Plaintiff assert his claims in Count One against Defendants under the general maritime law of the United States and under any other state or federal statutes, laws and/or codal articles which may be applicable.

122.

At all times pertinent hereto, Defendant, **Kinsale**, had in effect a policy or policies of commercial general liability insurance coverage on **BTB**, which policy or policies provide coverage for to the matters, persons, things, entities, acts, and omissions involved in this lawsuit, thus rendering the said defendant, liable unto Petitioners for all damages prayed for herein.

**COUNT TWO - SINGLE BUSINESS ENTERPRISE THEORY, ALTER EGO DOCTRINE, VEIL PIERCING, AND SHAM TO PERPETRATE FRAUD**

123.

Plaintiff reiterates, re-alleges and re-avers all allegations in the preceding paragraphs as if fully set forth at length herein.

12

41.

The separate identities of the **Corporate Defendants** and **Sargeant** should be disregarded and treated as one entity under the alter ego, veil piercing, single business enterprise, and sham to perpetrate fraud theories due to the following non-exclusive reasons:

125.

It has been judicially determined that **Sargeant** has "full control over [**BTB's**] operations," that Sargeant has "ultimate managerial control" over **BTB**, and **Sargeant** has "full control over **BTB's** operations and direct[s] and control[s] its decisions." *See PDVSA Petroleo S.A. v. Trigeant, Ltd.*, No. 09-38, 2012 WL 3249531 (S.D. Tex. Aug. 7, 2012).

126.

It has been judicially determined that **Sargeant** has used **BTB** in the commission of a fraud. *See PDVSA Petroleo S.A. v. Trigeant, Ltd.*, No. 09-38, 2012 WL 3249531 (S.D. Tex. Aug. 7, 2012).

127.

It has been judicially determined that **Sargeant** has testified falsely about his role and involvement with **BTB Refining, LLC** in the past. *See PDVSA Petroleo S.A. v. Trigeant, Ltd.*, No. 09-38, 2012 WL 3249531, at *5 (S.D. Tex. Aug. 7, 2012).

128.

It has been judicially determined that "**BTB** is the alter ego of Defendant [Harry] **Sargeant** [III]." *See Sargeant v. Al Saleh*, 512 S.W.3d 399, 407 (Tex. App. 2016).

129.

It has been judicially determined that **BTB** was **Sargeant's** alter ego and that **BTB** was attempting to transfer assets out of the country to another entity "with the intent to delay, hinder, and defraud." *See Sargeant v. Al Saleh*, 512 S.W.3d 399, 407 (Tex. App. 2016).

130.

Upon information and belief, **Sargeant** continues to exercise full control and ultimate managerial control over the **Corporate Defendants**.

131.

Upon information and belief, **Sargeant** continues to exercise full control over the **Corporate Defendants'** operations and to direct and control their decisions.

132.

**Sargeant's** unacceptably high degree of control of the **Corporate Defendants** causes the individual and entities to cease to be separate.

133.

**BTB** and **Global Oil** do not abide by any corporate formalities.131.

**BTB**, **Global Oil**, and **Global EOR** were inadequately capitalized.

134.

**BTB** and **Global Oil** regularly receive and make undocumented loans and perform other undocumented transactions to and from each other.

135.

The **Corporate Defendants** and **Sargeant** have used **the Corporate Defendants** to mislead Clovelly, Plaintiff, and others, to hide assets, and as an unfair device to achieve an inequitable result.

136.

**Sargeant** has a substantial ownership and shareholder interest in the **Corporate Defendants**, all of which are privately owned and operated entities.

137.

Upon information and belief, the **Corporate Defendants** were formed and/or used for the purposes of marketing, promoting, selling and contracting for the use of the unreasonably dangerous Hydra Steam Generator.

138.

Upon information and belief, misrepresentations about the safety of the Hydra Steam Generator were made to induce Clovelly to contract for the Hydra Steam Generator so as to maximize sales and profits from the Hydra Steam Generator.

139.

Upon information and belief, **Sargeant** and the **Corporate Defendants** were aware of dangers associated with the Hydra Steam Generator and failed to disclose such dangers to Plaintiff and Clovelly and/or warn them of such dangers.

140.

Upon information and belief, **Sargeant** and the **Corporate Defendants** interchangeably share corporate resources, including employees, offices, and assets.

141.

Upon information and belief, **Sargeant** has used the corporate form and the **Corporate Defendants** to disguise the ownership of the Hydra Steam Generator and avoid liability for wrongdoing.

142.

Upon information and belief, **Sargeant**, through his ownership and/or shareholder interest in the **Corporate Defendants** personally benefited from all profits realized through the Hydra Steam Generator.

143.

Upon information and belief, **Sargeant** has purposefully and willfully concealed the true identity of the entity which owns and is responsible for the Hydra Steam Generator.

144.

Upon information and belief, **Sargeant** has purposefully and willfully concealed the true identity of the entity which owns and is responsible for the Hydra Steam Generator to protect his interest in that entity.

145.

Upon information and belief, **Sargeant** is hiding the true identity of the business entity responsible for the Hydra Steam Generator and its process to protect himself from personal liability.

146.

Upon information and belief, **Sargeant** is hiding the true identity of the business entity responsible for the Hydra Steam Generator to protect a Sargeant-owned entity from liability.

147.

Upon information and belief, **Sargeant** is hiding the true identity of the business entity responsible for the Hydra Steam Generator to protect the business reputation of the entity in order to realize more profit.

148.

Based on all the foregoing facts asserted herein, Plaintiff asserts that the **Corporate Defendants** and **Sargeant** have committed and continue to commit constructive fraud upon them and Clovelly.

149.

In the alternative, Plaintiff asserts that public information on whether **Global Oil** is its own corporate entity providing the benefit of limited liability is inconclusive. To the extent **Global Oil** is not a juridical entity but is simply an operating name, veil piercing is unnecessary, and **Sargeant**, as the owner of **Global Oil**, is personally liable to Plaintiff for all of his injuries and damages caused by the Incident.

150.

In the alternative, Plaintiff asserts that public information on whether **Global EOR** is its own corporate entity providing the benefit of limited liability is inconclusive. To the extent **Global EOR** is not a juridical entity but is simply an operating name, veil piercing is unnecessary, and **Sargeant**, as the owner of **Global EOR**, is personally liable to Plaintiff for all of his injuries and damages caused by the Incident.

151.

In the further alternative, Plaintiff asserts that **BTB's** charter has been revoked by the Texas Secretary of State, so that **Sargeant** is not entitled to the benefit of limited liability, and that he is personally liable to Plaintiffs for all of their injuries and damages caused by the Incident.

152.

Plaintiff asserts his claims against the **Corporate Defendants** and **Sargeant** in Count Two under the general maritime law of the United States and under any other state or federal statutes, laws and/or codal articles which may be applicable.

## INJURIES AND DAMAGES

153.

Plaintiff reiterates, re-alleges and re-avers all allegations in the preceding paragraphs as if fully set forth at length herein.

154.

As a result of the foregoing, Plaintiff, **Davin Billiot**, suffered severe and debilitating injuries necessitating medical treatment and resulting in loss of work; thereby entitling him to past, present and future general damages for physical and mental pain and suffering, disability and loss of enjoyment of life; and past, present and future special damages for medical expenses, loss of earnings and earnings capacity.

155.

As a result of the negligence of Defendants, Plaintiff alleges he has sustained damages as follows:

a.    General damages, including past and future physical and mental pain, suffering, permanent disability and disfigurement; and loss of enjoyment of life;

b.    Past and future medical expenses;

c.    Past and future loss of wages and earning capacity; and

d.    Any and all other damages which may be proven at the trial of this matter.

**WHEREFORE,** Plaintiff, **Davin Billiot**, prays that the named Defendants be served with a certified copy of this complaint for damages, and be duly cited to appear and answer same; that after all due proceedings are had, that there be judgment rendered in favor of Plaintiff, **Davin Billiot**, and against Defendants, **Select Oilfield Services, LLC, BTB Refining, LLC, Global Oil Management Group,  Ltd., Global Oil EOR Systems, Ltd., Global Oil Financial Services, LLC, Supreme Electrical Services, Inc., d/b/a Lime Instruments, LLC and/or Lime Instruments,  Harry Sargeant, III, and Kinsale Insurance Company**, for all damages that are reasonable in the premises, together with legal interest and for all costs of these proceedings; and further, for all general and equitable relief which the court deems necessary and proper under the circumstances.

Respectfully submitted,

 /s/ Charles C. Bourque, Jr.
**CHARLES C. BOURQUE, JR (#20118) T.A.
JOSEPH G JEVIC III (#23145)**
ST. MARTIN & BOURQUE
315 Barrow St.
Houma, Louisiana 70360
Telephone: (985) 876-3891
Attorneys for Petitioner

**SERVICE INSTRUCTIONS ON NEXT PAGE**

**<u>PLEASE SERVE:</u>**

**Select Oilfield Services, LLC**
**Through its registered agent:**
E.C.Otillo, Jr.
139 N. Thread St.
Covington, LA  70433

**BTB Refining, LLC**
Pursuant to the Louisiana Long Arm Statute:
Through its registered agent:
Capital Corporate Services, Inc.
925 S. Federal Hwy., Ste. 375
Boca Raton, FL 33432

and

Pursuant to the Louisiana Long Arm Statute:
Through their most recent agent for service
of process:
Capital Corporate Services, Inc.
206 E. 9th Street, Suite 1300
Austin, TX  78701-4411

**Global Oil Management Group, Ltd.**
Pursuant to the Louisiana Long Arm Statute:
Through its registered agent:
William Rafferty, Jr., Esq.
401 Brickell Avenue, Suite 825
Miami, Florida 33131

**Global Oil EOR Systems, Ltd.**
Through its Registered Agent
H&J Corporate Services, Ltd.
Ocean Centre Montagu Foreshore, East Bay
Street
New Providence, New Providence NASSAU
P.O. Box SS-19084 Bahamas

**Global Oil Financial Services, LLC**
Pursuant to the Louisiana Long Arm Statute:
Through its Registered Agent:
William J. Rafferty, Jr., Esq.
Gray Robinson
401 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301

and

Pursuant to the Louisiana Long Arm Statute
through its Registered Agent
William J. Rafferty, Jr. Esq.
Gray Robinson
50 North Laura Street, Suite 1100
Jacksonville, FL 33301

**Supreme Electrical Services, Inc., d/b/a**
**Lime Instruments, LLC**
**and/or Lime Instruments**
Pursuant to the Louisiana Long Arm Statute:
Through its registered agent
Capitol Corporate Services, Inc.
206 East 9th Street, Suite 1300
Austin, Texas 78701-4411

**Harry Sargeant, III**
Pursuant to the Louisiana Long Arm Statute:
1420 North Ocean Boulevard
Delray Beach, Florida 33483-7363

**Kinsale Insurance Company**
Through the Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809